UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PERFICIENT INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO: 4:21CV759-HEA |
| | ) | |
| PAWAN GUPTA, | ) | |
| | ) | |
| Defendant. | ) | |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction against Defendant, [Doc. No. 3]. Defendant opposes the motion and a hearing was held on June 30, 2021. The Court has reviewed Plaintiff's Verified Complaint and all Exhibits thereto, the Motion for Temporary Restraining Order and Preliminary Injunction, the Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction, and the opposition Memorandum. For the reasons set forth below, Plaintiff's Motion for Temporary Restraining Order is hereby **GRANTED**.

In determining whether to issue a TRO, the Court must consider the following four factors: (1) the threat of irreparable harm to the movants; (2) the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movants will succeed on the merits;

and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); *see also Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013). The party requesting injunctive relief bears the "complete burden" of proving that an injunction should be granted. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

Defendant was formerly the Principal for Plaintiff's Order Management Systems ("OMS") practice. Defendant recently resigned from Plaintiff and joined Blue Yonder, Inc. ("Blue Yonder"), Plaintiff's competitor with respect to OMS solutions, as a Vice President.

Pursuant to the Verified Complaint and briefing in support of Plaintiff's Motion, Defendant is operating in violation of multiple contractual agreements with Plaintiff including post-separation restrictions. These restrictions include a covenant: (1) not to compete with Plaintiff by performing competitive duties for a business offering similar products or services for twenty-four months following his separation from the restricted area, i.e. metropolitan areas in which Plaintiff offers its products and services, (2) not to solicit or attempt to solicit current or prospective Plaintiff customers or attempt to encourage them to terminate, modify or not renew their business relationship with Plaintiff for a period of twenty-four months, (3)

not to solicit or attempt to solicit current Plaintiff employees to terminate their employment relationship with Plaintiff, and (4) not to disclose or cause to be disclosed any of Plaintiff's confidential or proprietary information or trade secrets.

Defendant has been in contact with one or more Plaintiff clients with whom he previously dealt while a Plaintiff employee, including Plaintiff client Sally Beauty. Although Defendant argues that Sally Beauty was also a client of Blue Yonder, nothing in the agreements limits the solicitation of Plaintiff's clients if that client was also a client of a competitor. Defendant's declaration fails to deny Defendant's solicitation by reason of his employment by Plaintiff. Defendant merely argues that Sally Beauty was a client but fails to declare that his interaction with Sally Beauty did not rely and use Plaintiff's goodwill. Indeed, Defendant's interaction with Sally Beauty specifically references Plaintiff. By communicating with Plaintiff's clients to offer services competitive to the services offered by Plaintiff, it appears from the Verified Complaint and Exhibits Defendant's conduct constitutes a breach of one or more of his post-separation contractual obligations.

Further, by offering competing products and services on behalf of Blue Yonder, it appears from the Verified Complaint and Exhibits that Defendant's conduct constitutes a breach of one or more of his post-separation contractual obligations. Defendant argues that he is offering a product whereas Plaintiff offers services. This argument is unavailing. Plaintiff sells third party products that

3

require servicing and implementation. Defendant sells its own products that require servicing and implementation. Prior to the Sally Beauty communication, Plaintiff did not believe Defendant was in breach of the agreements since Plaintiff thought Defendant was simply selling products. Upon discovery of Defendant's interactions with Sally Beauty, Plaintiff determined that Defendant was likely breaching the agreements through the competitive effect of selling the software and providing management thereof.

**Likelihood of Success on the Merits**

The Court is satisfied that Plaintiff is likely to succeed on the merits of several of its claims, including its request for enforcement of the Agreements, as well as its request for injunctive relief in order to protect the disclosure of its confidential information and trade secrets.

Under Missouri law, non-compete covenants are enforced if they are reasonable under the circumstances and their enforcement serves legitimate protectable interests. *Mayer Hoffman McCann, P.C. v. Barton,* 614 F.3d 893, 908 (8th Cir. 2010). Defendant contends that the Agreements are overly broad, and the motion is based on speculation. The Court finds that the Agreements at issue are narrowly-tailored efforts by Plaintiff to keep its information secret and retain competitive advantage, and it is more than adequately limited in scope.

4

With respect to scope, the Agreements are reasonable under the circumstances because Defendant was a high level and highly compensated executive. His noncompetition covenant limits his employment for a reasonable period. *Whelan Security Co. v. Kennebrew*, 379 S.W.3d 835, 846-47 (Mo. banc 2012)("Considerable precedent in Missouri supports the reasonableness of a two-year non-compete agreement. . ."); *Panera, LLC v. Nettles*, No. 16-cv-1181-JAR, 2016 U.S. Dist. LEXIS 101473, *6 (Aug. 3, 2016) ("the non-competition agreement at issue limits [defendant's] employment for only one year, which is reasonable"). Indeed, Missouri courts have held that non-compete agreements with a restrictive time period much longer than a one-year restriction are reasonable. *See, e.g.*, *Whelan*, 379 S.W.3d at 846-47; *Alltype Fire Prot. Co. v. Mayfield*, 88 S.W.3d 120, 123 (Mo. App. 2002) (finding a two-year limitation on employment reasonable); *Church Mut. Ins. Co. v. Sands*, 2014 U.S. Dist. LEXIS 93303, at *9 (W.D. Mo. July 9, 2014) (holding a three-year non-compete agreement is enforceable).

Courts applying Missouri law also readily enforce geographical limitations that span nationwide. *See, e.g.*, *Sigma Chemical Co. v. Harris*, 586 F. Supp. 704, 710 (E.D. Mo. 1984)(enforcing two-year, worldwide limitation); *Superior Gearbox Co. v. Edwards*, 869 S.W.2d 239 (Mo. App. 1993) (enforcing a nationwide non-compete for five years).

Enforcing the Agreement also serves legitimate protectable interests of Plaintiff. An employer has a legitimate protectable interest in its confidential and trade secret information (including customer lists), its customer relationships, and the goodwill that developed while Defendant worked for Plaintiff. *Whelan Security Co. v. Kennebrew*, 379 S.W.3d 835 (Mo. 2012). The Missouri Supreme Court has recognized the employer's legitimate interest in customer contacts to "protect against 'the influence an employee acquires over his employer's customers through personal contact.'" *Kennebrew*, 379 S.W.3d at 842 (*quoting Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 611 (Mo. 2006)). As such, customer non-solicitation provisions in relation to customers whom the employee dealt with, such as the provision in the Agreements, are reasonable to protect the employer's interests and, as such, enforceable. *Whelan*, 379 S.W.3d at 844-45. For example, in *Mid-States Paint & Chemical Co. v. Herr,* 746 S.W.2d 613, 618 (Mo. App. 1988), the court affirmed the lower court's holding that access to customer lists, pricing information, and formula books warranted enforcement of a restrictive covenant for period of three years.

Likewise, in *Cape Mobile Home Mart, Inc. v. Mobley*, 780 S.W.2d 116, 117-19 (Mo. App. 1989), the court affirmed the lower court's finding that a restrictive covenant was enforceable where an employee possessed access to monthly and year-to-date sales and profit statistics, quarterly business and sales reports, a

companywide operations and procedures manual listing employer policies and procedures, as well as customer lists. The court also noted that the employer advised employee that he would have access to a great deal of confidential information that he could not share.

Blue Yonder fits in the prohibited category. Blue Yonder may not have been considered a competitor when Defendant started working for Blue Yonder, but with the development of Sally Beauty considering switching software, and the support provided by either Plaintiff or Blue Yonder, it has become clear that Blue Yonder is now a competitor of Plaintiff. The restriction supports Plaintiff's legitimate business interests in protecting its confidential information and trade secrets, its goodwill, and its customer relationships.

If Defendant is permitted to continue to perform the competitive work at Blue Yonder, his use and disclosure of the trade secrets are inevitable. This is so because (1) the nature of his responsibilities at Blue Yonder are akin to those he held for Plaintiff and require his consideration of Plaintiff's trade secrets and confidential information in the faithful performance of those responsibilities. *See H&R Block Eastern Tax Services, Inc. v. Enchura*, 122 F. Supp. 2d 1067, 1074-75 (W.D. Mo. 2000).

**Irreparable Harm to Plaintiff Absent an Injunction**

"[T]o demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013). This Court finds Plaintiff will suffer irreparable harm if the terms of the restrictive covenants are violated. "Loss of intangible assets such as reputation and goodwill can constitute irreparable injury." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002). "Courts generally hold that the disclosure of confidential information such as customer information and business strategy will result in irreparable harm to the plaintiff." *Experitec, Inv. v. Stachowski*, 2014 U.S. Dist. LEXIS 185282, at *7 (E.D. Mo. Jan. 30, 2014).

It is not necessary for the employer to show that actual damage has occurred in order to obtain injunctive relief. *Ashland Oil v. Tucker*, 768 S.W.2d 595, 601 (Mo. App. 1989); *Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 75 (Mo. 1985). If the covenant is lawful, and the opportunity for influencing the employer's customers to the former employer's disadvantage, enforcement is appropriate. *Ashland Oil*, 768 S.W.2d at 601; *Osage Glass*, 693 S.W.2d at 75; *see also Systematic Business Services, Inc. v. Bratten*, 162 S.W.3d 41, 51 (Mo. Ct. App. 2005) (where the restrictive covenant is valid and the former employee has an opportunity to influence his former employer's customers, actual damages are not necessary to obtain permanent injunctive relief).

"The district court is empowered to issue an injunction 'even without a showing of past wrongs,' so long as 'there exists some cognizable danger of recurrent violation.'" *Church Mut. Ins. Co. v. Sands*, 2014 U.S. Dist. LEXIS 110953, at *6 (W.D. Mo. Aug. 11, 2014) (quoting *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). A former employee's "possible disclosure or use of confidential information such as customer information" is relevant in determining irreparable harm. *Id.* (quoting *Medtronic, Inc. v. Gibbons,* 684 F.2d 565, 569 (8th Cir. 1982)).

"The mere violation of a valid non-compete agreement can support an inference of the existence of a threat of irreparable harm." *Sands*, 2014 U.S. Dist. LEXIS 110953, at *7 (W.D. Mo. Aug. 11, 2014) (citing *N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 (8th Cir. 1984)). Irreparable harm is also properly presumed where there is evidence that a covenant not to compete is breached or confidential, proprietary information is being improperly used. *H&R Block Tax Servs. LLC v. Haworth*, 2015 U.S. Dist. LEXIS 127010 (W.D. Mo. Sept. 22, 2015). As in *Haworth*, monetary relief will not adequately protect Plaintiff's interests in these relationships, and it cannot fully remedy Plaintiff's loss of goodwill, confidential information, and other legitimate business advantage. *Id.* at *9.

In addition, "[c]ourts regularly find irreparable harm where a non-compete agreement states that its breach constitutes irreparable injury." *Panera, LLC v.*

*Nettles*, 2016 U.S. Dist. LEXIS 101473, at *10-11 (E.D. Mo. Aug. 3, 2016). Such is the case here. Defendant agreed with Plaintiff that the breach of any provision of this Agreement shall result in irreparable injury and damage to the Company, that there is no adequate remedy at law for such breach.

As recently acknowledged by the Court, in *Nettles*, while Missouri has not formally adopted the doctrine of inevitable disclosure, the Court found the rationale underpinning the theory helpful in understanding how a former employee's performance in his new role would "almost certainly require him to draw upon and use trade secrets and the confidential strategic planning to which he was privy." *Nettles*, 2016 U.S. Dist. LEXIS, *11-12. The Court then held that the disclosure of confidential information such as business strategy would result in irreparable harm to the former employer, and the Court agreed that the employee's employment with the new employer was likely to lead to such disclosure. *Id.* Lavin's entire career has been in the sale of infertility medication to fertility clinics, the medical professionals employed by such clinics and their patients.

This Court went on to hold that, even without relying on such inevitable disclosure, where the irreparable harm includes not only the divulgence of trade secrets, but also the violation of a binding non-competition agreement, the remedy at law is inadequate because such damages would be difficult if not impossible to measure. *Id.* at *12. The Court also found it significant that the employee had

agreed, as Defendant did here, that his breach would constitute irreparable harm. The same rationale applies to this case. The Court finds that Plaintiff has demonstrated that, absent injunctive relief, it has suffered and will continue to suffer irreparable harm.

Plaintiff is subject to immediate and irreparable injury if Defendant is permitted to continue to solicit Plaintiff clients and offer competitive service on behalf of Blue Yonder. Defendant agreed in the agreements that any violation of the noncompete agreements constituted irreparable harm. Moreover, the agreements set forth the basis of this irreparable harm-maintaining the confidentiality of Plaintiff's information, trade secrets and using Plaintiff's goodwill in competition with Plaintiff:

"Confidential Information" means any and all proprietary information and materials, as well as all trade secrets, belonging to the Corporation, its affiliates, its customers, or other third parties who furnished such information, materials, and/or trade secrets to the Corporation with expectations of confidentiality. Confidential Information includes, without limitation, regardless of whether such information or material is explicitly identified or marked as confidential or proprietary: (i) Inventions and technical information of the Corporation, its affiliates, its customers or other third parties, including computer programs, software, databases, know-how, code, programming techniques, discoveries, inventions, designs, developments, improvements, copyrightable and patentable material, original works of authorship, and trade secrets; (ii) nonpublic business information of the Corporation, its affiliates or its customers or other third parties including business plans and strategies, compensation data, non-public financial results and information, non-public sales, marketing, sales volume and profitability data (including by office, business partner, or product), pricing, margins, costs, bidding and marketing strategies, information regarding the skills, compensation and contact information of employees and contractors of the Corporation or its Subsidiaries, and similar items; (iii) Corporation and Subsidiary customer lists and

customer and prospect information (including sales volume, purchasing history, key contacts, needs, plans, requirements, expectations, and upcoming projects); (iv) information relating to future plans of the Corporation, its affiliates or customers, including marketing strategies, sales plans, pending projects and proposals, research and development efforts and strategies, and similar items; (v) other information of the Corporation, its affiliates, its customers or other third parties that grants an advantage over others in the industry by virtue of not being generally known.

\*     \*     \*     \*     \*     \*     \*     \*

Employee will at all times during the term of Employee's employment with the Corporation and thereafter: (a) hold in strictest confidence and use Employee's best efforts and the utmost diligence to protect and safeguard the Confidential Information; and (b) not use, directly or indirectly (except as may be required for Employee to perform Employee's duties for the Corporation), or disclose to any person or entity any Confidential Information, without the prior and specific written authorization of the Corporation.

Upon execution of this Agreement, the Corporation agrees to associate Employee with the goodwill of the Corporation as an Employee of the Corporation. Employee agrees not to use Employee's association with the Corporation's goodwill for the benefit of any person or entity other than the Corporation and its Subsidiaries.

So as to enforce Employee's promises regarding Confidential Information and the Corporation's goodwill and to protect the trade secrets, employee relationships, and customer relationships and contacts of the Corporation and its Subsidiaries, Employee agrees that Employee shall not during Employee's employment with the Corporation or one of its Subsidiaries, and for the twenty-four (24) month period immediately following the termination of Employee's Service for any or no reason (twelve (12) months in the case of paragraph (ii) below):

(i) directly or indirectly: (A) solicit (or assist another in soliciting) any Covered Client or Prospective Client for Competitive Products or Services, or (B)provide (or assist another in providing) Competitive Products or Services to any Covered Client or Prospective Client;

(ii) directly or indirectly: solicit, recruit, hire, or otherwise interfere with the employment or engagement of any employee, contractor, or consultant of the Corporation or any Subsidiary who was an employee, contractor or consultant of the Corporation or any Subsidiary during the last twelve (12) months of Employee's employment with the Corporation or any Subsidiary. In the event a court of competent jurisdiction determines that Employee violated this paragraph of the Agreement and the solicited, recruited or hired away employee, contractor, or consultant terminates his or her employment or engagement with the Corporation or any Subsidiary, the Corporation shall be entitled to liquidated damages from the Employee, but not as a penalty, an amount equal to fifty percent (50%) of the annual compensation or fees the Corporation or Subsidiary paid to the solicited, recruited or hired away employee, contractor or consultant in the twelve (12) months preceding the date on which the employee, contractor or consultant ended his or her relationship with the Corporation or Subsidiary.

(iii) engage in a Competing Business anywhere within the Restricted Area;

(iv) perform any Competitive Duties (as an employee, consultant or otherwise) anywhere within the Restricted Area for any Competing Business; or

(v) fail to abide by and comply with the restrictions on the use and disclosure of Confidential Information and trade secrets contained herein or in any other agreement now or hereafter entered into by the Employee with or for the benefit of the Corporation and its Subsidiaries, including, but not limited to, the Confidentiality Agreement.

For purposes of this Agreement: (a) "soliciting" a Covered Client or Prospective Client shall be defined as accepting business from a Covered Client or Prospective Client, or initiating or having contact or communication of any kind whatsoever, whether directly or indirectly and regardless of who made first contact, with the Covered Client or Prospective Client for the express or implicit purpose of inviting, encouraging or requesting the Covered Client or Prospective Client to transact business with Employee or the Employee's new employer; (b) "soliciting" a Corporation employee, contractor or consultant shall be defined as initiating or having contact or communication of any kind whatsoever, whether directly or indirectly and regardless of who made first contact, with the employee, contractor or consultant for the express or implicit purpose of inviting,

encouraging or requesting the employee, contractor or consultant to terminate his or her business/employment relationship with the Corporation.

Defendant's job title and duties, email correspondence from Plaintiff client Sally Beauty regarding Defendant's solicitation efforts, and Defendant's failure to respond to Plaintiff's reasonable inquiries for additional information indicate he is operating in breach of his agreements. Monetary relief will not fully or adequately compensate Plaintiff.

**Balance of Harms**

The Court finds that in contrast to the irreparable harm that Plaintiff will suffer if injunctive relief is not granted, Defendant will suffer comparatively slight harm. Defendant will not be precluded from employment with Blue Yonder, rather he will be limited in the actions he takes. Indeed, Plaintiff recognizes that not all of Defendant's duty are in direct competition with Plaintiff. Thus, the harm that Plaintiff may suffer absent an injunction, outweighs any harm that may befall Defendant if his actions are enjoined.

**The Public Interest**

Here, the balance of the equities also favors granting Plaintiff's motion for injunctive relief. Enjoining Defendant from violating Plaintiff's contractual rights and federal and Missouri statutes will not harm the public, as it will continue to have access to Blue Yonder's (and other competitors') products and services. Conversely, denying injunctive relief will cause Plaintiff irreparable harm, deny

14

Plaintiff the benefit of its bargain with Defendant, and cost Plaintiff business and clients that it would not have lost but for the current situation. Moreover, parties should be able to rely on each other to comply with their agreements and should be able to rely on the courts to enforce agreements when they are breached. The public interest thus weighs in favor of enjoining Defendant as requested by Plaintiff.

## CONCLUSION

Based upon the foregoing analysis, the Court concludes a temporary restraining order is appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for a temporary restraining order [Doc. No. 3] is **GRANTED**. Defendant Pawan Defendant is hereby:

a. Enjoined from or performing any work, task, or other employment-related service on behalf of Blue Yonder in relation to OMS consulting and strategy services or any other services competitive to the duties he performed at Plaintiff;

b. Enjoined from being employed by or performing any work, task or other employment-related service on behalf of any other competitor of Plaintiff in relation to OMS consulting and strategy services or any other services competitive to the duties he performed at Plaintiff;

c. Enjoined from directly or indirectly contacting or soliciting any person or company that was a customer or had been solicited by Plaintiff as a potential customer of Plaintiff for a twenty-month period prior to Defendant's resignation;

d. Enjoined from directly or indirectly contacting or soliciting any person that was any employee, contractor, or consultant of Plaintiff or any subsidiary at the time of Defendant's resignation;

e. Enjoined from taking any action which might induce any business or person dealing with Plaintiff to cease dealing with Plaintiff, reduce its level of business with Plaintiff, or otherwise begin dealing with someone other than Plaintiff.

This Temporary Restraining Order shall expire on July 15, 2021, at 10:30, unless otherwise extended by this Court in the courtroom of the undersigned.

The hearing on Plaintiff's Motion for a Preliminary Injunction is set for 10:30 a.m. on the 15th day of July, 2021 in the courtroom of the undersigned.

Pursuant to the parties' agreement, no bond shall be required.

Dated this 6th day of July, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE